Our next argued case is Appeal No. 22-1260. This is SNIPR Technologies Limited v. Rockefeller University. Okay, Mr. Matsui, whenever you're ready. May it please the Court, Brian Matsui for SNIPR. The Board made three errors in canceling SNIPR's pure AIA already issued claims. First, it used Section 102G to invalidate SNIPR's patents, which had satisfied all the patentability requirements in order to be issued. Second, it subjected SNIPR's patents to an interference, even though Congress eliminated interferences for pure AIA patents. And third, the Board refused to decide as moot a threshold issue that was determinative of whether Rockefeller even had standing to be in an interference. Now, the effect of those three errors, if not corrected by this Court, is that Congress utterly failed in transforming the U.S. patent system to a first-inventor-to-file system. Until the last pre-AIA patent or last mixed-AIA patent issues, pure AIA patents are always going to be subject to the possibility of being dragged into an interference. It seems like whichever way we rule, there's going to be some arguable distortion in the system. But can you just respond to the other side's core argument, which is that although your patents are no longer eligible to provoke an interference, nevertheless, the Rockefeller patent application is still eligible to provoke an interference, and under old Section 135, it's permitted to provoke an interference with any unexpired patent, and all of your patents are currently unexpired patents. So under that plain reading of the text, and obviously we're all textualists now, why wouldn't that be an okay takeaway from understanding what to do here? Well, I think there's two points in your question I think that need to be addressed. The first is whether or not a sniper's patent even could be subject to an interference, and that's one question. And the second is, regardless of whether or not they're subject to an interference or not, whether or not they can be invalidated based upon invention priority in 102G. Well, let's just start with the text of 135. I mean, if you want the court to write a reverse here, we would have to answer for what the old 135 says about any unexpired patent and how sniper's patents are all unexpired, yet somehow they don't fit within the term on any unexpired patent. Why would that be? Well, I think that let's say, first of all, even assuming that the interference did apply to sniper's patents via 135, that still doesn't answer the question as to whether or not you can invalidate the patent because it's not subject to any sort of patentability requirement based upon first to invent. That comes from 102G. I'm very lost. It seems like you're already running to a backup argument. I would rather hear your primary argument for why your patents do not qualify under that term, any expired patent. Certainly, Your Honor. I mean, I think that the first thing to do is look at what the AIA did. It eliminated 135 in its entirety for pure AIA patents. It replaced 135 with derivation proceedings. So, in effect, 135 just doesn't exist. It's erased from the books for pure AIA patents. Now, in Section 3 and 2 of the AIA, what it did is it said for certain patents, these mixed applications that have some AIA claims and some pre-AIA claims, the provisions of 102G and 135 shall apply. And so that means that for those patents, the provisions, those patents, the mixed patents, those provisions of 135 shall apply. And that means that they can be an application that would start an interference. They could be any application that could be drawn into an interference. And they, if once issued, could be any unexpired patent that's brought into an interference. That's what 135 applies to, the pre-AIA 135 applies to today, because Congress eliminated that provision otherwise. And so it's not really helpful, I think, for the other side just to point to any unexpired patent, because any unexpired patent has to be read in the context of what Congress did when it erased 135 in its entirety for pure AIA patents. And then in 3N2 said those provisions shall apply when we're talking about these mixed patents. And those provisions include the application that starts it and any unexpired patent. That's basically why, when you look at what Congress did, they basically transformed this system from a first-to-invent system to a first-inventor-to-file system. And they wanted to eliminate interferences. They wanted to eliminate invention priority, because they knew that the United States patent system, as you know, was out of step with the rest of the world. And inventors had to basically maintain all these costly records that were impossible to sort of keep to have these potential invention priority fights down the line. And that's what Congress did. So this is probably a little simplistic, but basically what you're saying is that any unexpired patent language in the old 135 only applies, putting aside those exceptions that I think aren't relevant here, to the old patent system. And it can't apply to anything under the new patent system. That's right. It's really just two different worlds. Right. You're in the new world, so that language, even though you could ostensibly read it very broadly, it's read very broadly in the context of the old world and has no bearing whatsoever in the new world. Exactly, Your Honor. Because Congress did not say that you were going to apply in any circumstances 135 or 102G to these already-issued pure AIA patents. In effect, what's happening here is what the board did is interpreted a zombie law with respect to the pure AIA patents to try to draw them in to an interference. And I think if we just take a step back, it doesn't make any sense what happened here. The Director doesn't dispute at all that we basically satisfied all the requirements in order to get an issued patent under the AIA. We met the requirements of the current 102A. We didn't fall under any of the exceptions. And so we got a valid property right here. And yet now we had our property right taken away from us based upon a statute that was never required for us to satisfy under patentability. That simply just makes no sense. And it goes against what Congress wanted to do when it enacted the AIA. Can you give me your rationale for why Congress wrote Section 3N2? What was it trying to accomplish through 3N2? I think that what it wanted to happen here is that one of these mixed applications, the ones that had some pre-AIA claims and some… Be examined under the new AIA 102 and yet be subject to interferences. Right, because they would… Why did they think about this particular category of AIA patents that ought to be called out expressly to be subject to the possible interference? Well, I think that is the transition right here that Congress was trying to address. It was basically getting these straddle patents that basically were transitioning from the old to new rules. And so it wanted them to meet both requirements. What did the ledge history say about it? The ledge history would say… What did it say? I think that the PTO's brief had an example on page 8. That was like the 20-page floor statement, right? Right, and that's basically what shows the example of why they wanted 3N2 to actually be there. So they would have the possibility of you have a pre-AIA claim that was filed after the AIA one and you would have 3N2 to make sure that they could either start an interference or they could be drawn into an interference. Now, I think importantly, like if you take what is here in this chart and we give it the meaning that the board did or the director or Rockefeller did, it really was unnecessary for Congress to do this because they always could have been drawn into an interference, even without 3N2. And so what the provision was making clear was that that wasn't the case, that's not what was going to happen, but for 3N2 to make it so that they could be an application to either start the interference or to be drawn into the interference. And that's what happened in this case. Given the merits here, do you agree that Rockefeller's published application is prior art against all of Sniper's patents here? I think that it would… It predates. It predates. It does. And certainly I think that this is another thing that Congress wanted to happen here. By moving to the first-to-file system, they wanted under 102A Rockefeller's application to potentially be an anticipatory reference, but you would have to decide that as a question of fact on a claim-by-claim basis. And our point is that… Likewise, if the Rockefeller application ever gets issued as a patent, then that patent would be prior art against all of Sniper's patents under 102A2. It would be… They would have 102… Yes, they would have 102A… They would have any challenge based upon what is basically disclosed, but our point is that they didn't… Their disclosure, their application doesn't actually anticipate or render obvious our claims. And that was something, of course, that was never decided. Rockefeller asked in this interference to actually file a 102A motion, and the board didn't authorize it. It only decided this based upon invention priority, which the court knows means that you can eliminate all the patents in one sort of broad action. But there is no presumption to knock out all the claims and all the patents when you're dealing with something like anticipation or obviousness. So the mere fact that Rockefeller says, well, they're the first to file, certainly, they're the first to file this application, but that doesn't actually mean they're the first ones to invent and actually the first ones to file what is actually claimed right now. And that's what we dispute. That's what has never been decided by this court, and that's what Congress wanted to happen. It wanted there to be PGRs. It wanted there to be IPRs. It didn't want there to be interferences anymore. In fact, Congress had in I think it was Section 6F of the AIA, it wanted the director to go through pending interferences and potentially get rid of them, dismiss them without prejudice to bringing a PGR. So it doesn't make any sense today to have an interference like this. My point is it seems like whether we permit this interference or not, you're still going to have to meet your maker in a sense. No, no, we disagree with that, Your Honor. There will be a challenge to these patents, perhaps under 102 or 103, in light of Rockefeller's published application at a minimum and perhaps ultimately an issued patent. But that's always the possibility whenever two people invent subject matter that may be somewhat similar. There always is the possibility that you could have a 102 and 103 challenge. But that doesn't mean that you then say we're going to just not put them to their burden of proof. We're not going to make them actually prove on the facts that their application anticipates, each and every one of our claims. Can I ask you about the motion that happened at the board that got denied? It got a little confusing for me to track exactly how things curled. The one question I have is ultimately the board said I'm dismissing your motion sniper because you never established that Rockefeller's application isn't a 3N2 application. And I'm wondering, was that brought up at all in the briefing from either party or was that the board sua sponte, just identifying that in its dismissal decision? No, that was a sua sponte sort of action by the board. The board authorized us to file a motion for us, a threshold issue, when we said that if you don't accord the benefit to the count, they're no longer a pre-AAA application and then you should terminate the interference. Rockefeller responded on the merits on that, and then the board dismissed the motion as moot. Now, I would just want to say that I think that this probably motion 4 probably just shows in part why it doesn't make any sense to have interferences with a pure AIA claim here. The only accorded benefit that we saw, the only sort of evidence that we saw in the declaration, that they had a pre-AIA date that would make them mixed, was the accorded benefit that the board gave them. And that's what we attacked, and we showed that they weren't entitled to the accorded benefit of the provisional application that was filed before the pre-AIA, and that corresponded to all their claims. But now the board says, and the other side says, that we need to show that any claim and any application did not have an effective date before the pre-AAA. But the problem with that is that in natural alternatives and power oasis, this court has consistently said that you just say the default rule for any claim is the date of the application that it's contained in, and it's up to the patentee or applicant to actually show that they're entitled to an earlier date. And so we had, it's not our sort of obligation to go through every claim by claim to say, no, they're actually mixed, particularly when the board, when it declared this interference, didn't identify any other claims that it said would give them a pre-AIA priority date. Okay. Mr. Matsui, thanks very much. We will reserve your vital time. Thank you. We'd like to hear from the PTO first, and let's give them a total of 18 minutes. Ms. Craven, go ahead. Good morning, Your Honors. May it please the Court. Snipers post-AIA patents are subject to an interference under the plain language of the AIA's timing provision and the pre-AIA law. I'm confused. The board says that if they don't have discretion to declare an interference, the sole alternative is the granting of two patents to the same invention. That seems to be your... Essentially, the director has declared the interference between what is, I think, in dispute now, interfering subject matter claimed by the applicants. What about an ex-party re-examination or an inter-partis review? So, the office itself can't initiate a PGR and IPR against snipers' patents. That's obviously a third party that brings it to the office. There are director-initiated re-exams that are possible if there's a substantial new question of patentability. However, we would like to interpret the statutes to avoid issuing two interfering patents to different entities rather than using our tools to correct that once it has happened. And we think we can read the statute that allows this interference to proceed so that we don't issue interfering patents across the AIA dateline to these different parties. It wouldn't be the first time that the PTO granted interfering patents to two different inventors, though, right? I mean, this is maybe the first time where we know about it. It may have happened just in the prior appeal. Right. This may be the first time that I'm aware that we know that they're interfering subject matter, that no one is contesting that this is interfering subject matter, and that then we would, under snipers' construction of the statute, be forced to issue. So, as I understand snipers' argument today, they're saying we have to read the old Section 135 in the context of what happened in the AIA. And when we look at the effective date provision under Section 3N, we know that snipers' patents are all first-of-file patents. They aren't examined in the first-to-invent world. And then we know from 3N2 that Congress gave notice and specified a certain unusual category of AIA patents that will be subject and on the hook to a possible interference. And I guess the question is, why isn't that some indicia that Congress understood, okay, we might have to think about the possibility of an interference between an AIA-style patent and maybe a pre-AIA patent. And here's what we've come up with. This particular subclass that we are identifying in Section 3N2 is where those AIA-style patents will be subject to an interference, can be a party to an interference. And if that's the right takeaway, then why shouldn't old Section 135 be read to say, old 135 is applying where the old pre-AIA matters, which is for pre-AIA patents and pre-AIA applications, except for this one category of AIA-style patents that we have identified in Section 3N2. And therefore, we, the Court, can read everything nice and harmoniously. What's wrong with that story? And why shouldn't we read it in light of the doctrinal interpretation, which says that when the legislature has the specific, it excludes the general. Right. So the purpose of N2, which is indicated by the floor debate, is that it was to prevent interfering patents from issuing across the AIA dateline. So that was the purpose. And you can definitely read the statements by Senator Kyle, which I'll emphasize are just the statements of a single senator, that as Sniper does, that that means you had to have N2 in order to bring this second category of applications and patents into interferences. But that would then result in scenarios. That's under-inclusive of scenarios where interfering patents could issue across the AIA dateline. And N2 can serve a purpose without it being just this single category of applications. I'm trying to understand the agency's concern about possibly granting a legitimate pre-AIA patent under old pre-AIA law, and then a legitimate AIA patent under AIA law on the same thing to different inventors. How often can that really happen when, if they really are legitimately claiming the same thing, the pre-AIA patent is always going to have the earlier effective filing date. And so it's always going to predate and serve as prior art and knock out any subsequent AIA patent that issues under AIA law. Well, as we put, the example we put in our brief is you could have a pre-declosure. It's a highly imaginative example, and I give you credit for that. It's based on six different contingencies within a very tightly narrow time frame. That's right, Your Honor. I'm sure you haven't identified an example of where this happened. I am not aware of an example of where this has actually happened. And I would hate to think that that slender read would be the basis for throwing every AIA patent into the mix of potentially being dragged through the back door into an interference arena. Well, there is the broader part that the Patent Act, both pre-AIA and AIA, does seek to prevent having interfering patents issued to different entities. The goal of the prior art provisions is that you would identify who, in fact, is the first to invent. But Congress was pretty clear in the AIA, right, that it hated interferences and wanted to get rid of them. That's correct. Right. So they wanted nothing going forward after these effective dates, except that the small exceptions be subject on its face to have an interference regime. Yes, you can read it that way. That's certainly true. Go ahead. I just want to say, but the logic of your argument is that even though Congress has expressed this purpose very, very clearly, I think, is that based on language from the old statute, that they're repealing all new AIA patents, nonetheless, for a fairly lengthy period, because they're all these unexpired pre-AIA patents, are going to be subject to interferences. Right? That is right. Don't you think if Congress actually meant that, they would have written that? Well, they could have gotten rid of interferences altogether as a dead letter for all applications of patents, but they didn't. They left the pre-AIA law for applications like Rockefeller. But it seems like they did a specific carve-out. Right. There is, then, these N2 applications, which serves the purpose and prevents someone who has ever had an AIA priority date from playing games across the date line, as you can imagine the situation here, if you didn't have N2. Under N1, Rockefeller, all they have to do is present a claim to the office that's had an AIA effective date and say, hey, we are now an AIA patent under N1, and we don't have to, you know, we now are the first to file, and we just win. You could also imagine a scenario where Sniper filed a- So let's give credit to Congress for figuring that out and then specifying that in 3N2- Right. were to understand the possibility of that very gamesmanship, and then addressing it and taking care of it and nipping it in the bud. But what we're dealing with here is very, very qualitatively different, where people have been given notice, throw away your lab notebooks, because all that matters is your earliest effective filing date. Now you want to tell all of them, oh, but wait a second, just kidding. Okay? Actually, you do need to keep all those lab notebooks. You better keep everything. You better keep all your files. You better not erase one darn thing. So I'm going to take a wild guess that the BTO hasn't ever written a notice like that to all the AIA applicants and patent owners, that they still need to keep doing this, because there's this thing called old Section 135 that happens to have embedded in it this statement about any unexpired patent. And we read that to cover your AIA patents. I'm going to guess there isn't a notice like that. No, there is not. So SNIPER is probably reasonably said to be caught way off guard here in this circumstance. In terms of the MPEP or other notice, there wasn't. There's obviously the proposed provision of the Interference 135B, that a year after a patent is issued, no interfering claims can be presented. So it's not like AIA patents are forever going to be at risk of the interference. Because of the proposed provisions, a year after a patent issues, no claims... It seems to me like the director is rewriting the statute in a way, wishes Congress would have written it, but it's not what Congress said. They flipped from one system to the other. And maybe they didn't think about this problem you're worried about, but maybe they did and they didn't care. I mean, I think they were worried about it, because N2 called interfering patents. Well, that doesn't get you very far, right? Because if you say they're worried about it, and so they enacted N2, then we're bound by what N2 says, and that doesn't apply here, right? Well, yeah, we don't think it does, because Rockefeller is being examined as a pre-AIA application. The 3N2 doesn't qualify Sniper's patents. That's true. That's true. So that's what we're trying to figure out. I mean, it takes two to tango here, just because Rockefeller's application can be a party to a 135 interference doesn't necessarily mean that Sniper's AIA patents, likewise, can be a party to a Section 135 interference. So the office is reading the pre-AIA law in light of the fact that it's examining Rockefeller's application, and 135A says any unexpired patent. Congress could have amended it to say any unexpired patent that is also subject to 102G, or that falls under the pre-A law, but they didn't do that. So what the office is doing is... But there's clear congressional intent, and it's evidenced by the general ledge history, which I thought your friend on the other side would say, that they clearly wanted to eliminate interferences wherever they could. That is true. And they will be eliminated when there's no applications or patents that have pre-AIA. How many years is that? I mean, that's another 15 years, isn't it? I think it's March 16, 2034. So it is a long time. We'll be long gone by then. I hope not, Your Honor. I will. But, I mean, that's just extraordinary. Given this strongly expressed disapproval of the interference system, that Congress, by not specifically saying that we're going to amend this language in this statute that we only thought applied to the old system anyway, that they thought they needed to do that to get rid of interferences for the new stuff. Because I can't imagine that they would have thought, well, we're getting rid of interferences, but not really for the next 20-some years. I mean, that's fair. We are reading the plain language. I know, but textualism has its limits. That's fair. And absurdity is one of those limits. It seems pretty absurd to me to say, to read Congress' change from first to invent to first to file and get rid of interferences to say, but not really until all these ones have worked through their life. That's true. That is a fair way to read it. The office is reading it from the fact that we're examining pre-AIA applications. And we now know. And you can examine them under the pre-AIA system for all pre-AIA patents. Right. We were reading it so it would not be under-inclusive of interfering patents that could issue over the date line. And I guess, so for Sniper's patents, they were told you're going to be examined under the new AIA 102 because you are the first inventor to file kind of application. Correct. But now by being forced to experience an interference, now the old 102 is being applied, the first to invent laws. And so it seems to me it's created this mongrel thing where you're trying to do two different regimes to the same patent. You're first doing the first to file scheme and then now you're saying, but we're also going to make you go through the first to invent hopscotch steps. There's something peculiar and almost unnatural about that, don't you think? I definitely see Sniper's point and your point, Your Honor. It is. We're just reading. Will the agency be outraged if they're not allowed to have their interferences for these sorts of situations?  The office is reading the statute. I mean, if Rockefeller really invented this, they clearly have an earlier priority date. So why would you give a patent to Sniper at all? We're obviously here now when Sniper's patents have already issued. So if that was a mistake, there are ways to challenge that mistake under the AIA. Well, there's not ways for the office to challenge it. Well, maybe Congress didn't want the office to challenge that. If they did, they could have given you the opportunity to do exactly what you're saying. That's fair. We have read it so that we can do error correction through this interference if that truly was an error. And not issue interfering patents across the date line. If we cannot read the statute that way, Rockefeller's otherwise allowable claims can issue. And there then, it's the parties that can resolve it. I guess in this particular instance, it may well be that the patent examiner for Sniper's patents just overlooked the published application of Rockefeller's. I do not know what the prosecution history was. It may be that the Rockefeller application didn't actually invent what they say they invented now. You're right. Well, it didn't determine that. That's true. We could move to Motion 4. If you decide for us on Motion 1, there's still Motion 4. In that case, the board raised the issue of whether Rockefeller was still an N2 application and thus still subject to interferences. And that was something the board's response raised as a basis for kicking out the motion. No party raised that possible angle. That's true. It's almost like a new ground of rejecting the motion raised for the very first time in the decision. It was a response to what Sniper's relief was requested. Sniper was asking that the interference be terminated. And in order to give that relief, it's got to be that Rockefeller's not just not a pre-AIA application, but also not a N2 application also subject to 102G, an interference law. And they didn't make that showing. And to the extent they're arguing now that the initial showing was insufficient by Rockefeller, the board followed the regulations which accord the benefit date. They make a determination that they have accorded a benefit date based on a proper constructive reduction to practice back to the provisional. And it was then Sniper's burden to challenge that. We should let your friend also get some time. All right. Thank you, Your Honors. Thank you. We'll give the appellee five minutes here. Go ahead. Thank you, Your Honors. If it pleases the Court, I'd like to start with congressional intent. And I think that Congress certainly wanted to eliminate future interferences. But at the same time, they wanted to preserve interferences for pre-AIA patents or applications to allow them to get into an interference. That seems to be very clear. But the fact that they never touched the N2 never discusses pre-AIA. What's wrong with understanding 3N2 as Congress identifying and expressing and giving notice to the world that there is just one subtype of AIA patents that are going to be possibly subject to interferences, and it's this particular subtype that we are identifying right here in 3N2? Because obviously under 3N1, for AIA patents, the default is you're just looking at AIA law. Well, I think there's two things. 1N2 does create as opposed to take away. It allows the application of 135. It doesn't say anything about taking anything away anywhere in N1 or N2. If you say create, you could also say limit. I think that at best 3N and 3N2 are confusing. I think that was made very clear by this court in Biogen that referred to it as being not exactly a model of clarity. So I think it's not a clear statute at all. There are things missing. It does not refer at all to pre-AIA. It doesn't seem to take away anything from pre-AIA patents and applications whatsoever. At the same time, it seems to add the ability for these transition patents, the ability to get into an interference. When they're mixed? The mixed, yes, when they're mixed. So why does 3N2 even exist under your understanding of the AIA and its interrelationship with old Section 135? Because you could strip out 3N2, and you could still subject all these so-called mixed AIA patents and patent applications to old interference law under your theory. Well, in fact, 3N does not discuss the pre-AIAs at all. I think that Congress was worried about having two patents issue for the same invention, and I think that was their way, something that they thought about. They did not, I don't think, expect that the entity that was not the first to file, not the first to invent, would be the first to patent. I don't think that that was something that they considered when they wrote N2. I think there would have been some more explanation. I think there are a lot of things that they didn't anticipate in N2, and I think that leads to a lot of the lack of clarity. Well, so aren't you just asking us to rewrite the statute to address this situation? I mean, we can't do that. No, I'm not. Congress anticipated one issue, and they put it in there, and any other potential problems, they're out there, and they gave you alternative ways to deal with competing pre- and post-AIA patents that may conflict, but an interference isn't one of them. I think by not doing anything to pre-AIA 135 whatsoever. I don't understand why you keep saying they didn't do anything to pre-AIA patents. They completely said this scheme no longer exists for post-AIA patents. It's gone. It's replaced. So, yeah, the scheme exists for all pre-AIA patents, and why wouldn't we read that language that you and the director want to look at as any unexpired patent as confined to that pre-AIA patent world? Because when they wanted it to expand beyond that, they specifically put in that three-whatever-that-in exception we're talking about. Well, 3N2 doesn't further clarify that those mixed patents can't get into an interference with pure AIA patents either. They could have put it there. They could have put it into the pre-AIA that they were getting rid of. They didn't do any of that, and I think if you look at pre-AIA 135, it is a very clear statute. It says any, and it says very clearly, shall determine priority. So these are terms that are very clear, and I think the court should follow the clear statute as opposed to taking 3N2. It does not. Well, I don't think we need to worry about the N2 statute. I think we look at the AIA for the post-AIA patents, and it says no interferences. Why isn't that clear? Well, I don't think it anywhere says addresses this particular point. It eliminates the entire interference procedure for any patent filed after the effective date. It eliminates the ability for the post-AIA. I mean, can you address my, I guess, more of a comment but a question to the Director. If Congress actually meant for this interference proceeding to go on for another 20 years after the enactment of the AIA, wouldn't they have said that? No, I don't think so. I think that allowing interferences to continue for pre-AIA. And necessarily pulling in AIA. And pulling them in doesn't in any way go against that. I mean, they left pre-AIA alone completely. They didn't touch that regimen at all. I'm pretty sure that if you asked most of the members of Congress that were interested in this, they would be shocked by your argument. Well, I don't think so because I think what they would be thinking of is that these patents would never have issued. So they didn't contemplate the possibility. Right, which is why you're asking us and the Director is asking us to rewrite a statute to deal with the possibility they didn't contemplate rather than just apply their intent. Sometimes Congress doesn't address every single thing. If you think or the Director thinks this is going to be a big problem going forward, you can go to Congress and say, oh, here's this other thing you should have thought about, about whether we can pull in post-AIA patents. But when they said we're switching from one regime to the next with only this limited exception, why don't we take them at their word? Well, I think we are taking them at their word. Because I think they left that issue open completely. The word was that they were specifically driven by interferences. What about IPRs? Could you request an IPR to cancel all of Sniper's patent claims? Based on the strength of your published patent application? I don't think that the burden is on us to fix that problem. Is there a possibility for challenging? You have every right to do that. Well, I don't think anything would stop my client from doing that, no. But it would be of a large expense to them to go about that particular route as well. I think interferences are known as being pretty expensive, too. Yes, but what they do answer the question of is whether or not Rockefeller could be invalidated under 102G. The answer to that question from the interference, and only from the interference, is no. Why? Because within the context of the interference, there's a senior party, there's a junior party. Rockefeller is the senior party. The presumption is Rockefeller wins, unless the junior party does something about that and changes that. And nothing was done during the interference to change that particular order of the parties. Motion 4 doesn't change that either, and I think that's something that the board saw. It doesn't change it. It then allows Rockefeller's patent to issue, because Rockefeller's application is still subject to 102G. Is Rockefeller's application a 3N2 application? I don't think that that's... I just need an answer. Is it a 3N2 application? Has it ever contained a claim that effective filing date is post-effective date of AIA? I don't have an answer on that question as to whether it's a pure AIA or it's a mixed. It's never been argued that it's either of them. But you don't know. You don't know. You're not familiar enough. I can't go through, no. Okay, that's fine. Thanks very much. We have your argument here from the other side. Thank you. Five minutes. I just have a few brief points, Your Honors. First, I think that our position is the textualist position here when you look at 3N2. It's saying that the provisions of 135 shall apply to those mixed applications. And with respect to 3N1, it basically... The AIA applies to pure AIA claims, and it erases 135 in its entirety. So the textualist reading is actually our reading in this situation. And that's consistent with the public policy that Congress wanted to enact when it basically called interference as burdensome and costly. And, in fact, in its not legislative history, but in its expressed statutory statement, it wanted greater certainty for inventors. But there's not going to be any certainty under the board and the director's rule because you're going to have to go at least 10 more years in which you can be drawn into an interference. And I think it's not hypothetical that the court could see these interferences again because the first time that Rockefeller ever disclosed the inventions was when it copied our claims. And so that's the first time that you ever saw them show the invention. And that was well after any of these filing dates. And the last point is that there is no real repose with respect to interferences. There still is Section 291. And so I think that you're going to see, under the director's rule, these applications that become patents then trying to bring in pure AIA patents into interferences in district court. Congress wanted to eliminate and move away from the first-to-invent system. It did so. It created very narrow exceptions in 3 and 2 for these interfering patents. And that means that the old 135 applies to those interfering patents. It doesn't apply to pure AIA claims. And I think Congress would be very surprised if it thought that interferences were going to continue until 2034 or whenever. If there are no further questions, we would ask that the Court reverse. Okay. Thank you very much. The case is submitted, and that concludes today's oral argument.